Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 1911 | **DATE** | 12/13/2004 |
| **CASE TITLE** | Dawson vs. The Bureaus, Inc. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 24-1) for summary judgment is granted. Final judgment entered.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 1 4 2004 date docketed | 28 |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | JXM docketing deputy initials | |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| SCT courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
DEC 1 4 2004

JEFFREY DAWSON, )
)
Plaintiff, )
)
vs. ) 04 C 1911
)
THE BUREAUS, INC.; BUREAUS INVESTMENT )
GROUP PORTFOLIO NO. 1 LLC; and BUREAUS )
INVESTMENT GROUP, LLC, )
)
Defendants. )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Defendants' motion for summary judgment. For the reasons set forth below, the motion is granted.

### BACKGROUND

In April 1999, Plaintiff Jeffrey Dawson entered into an agreement with Chase Manhattan Bank USA, N.A. ("Chase") for a Platinum MasterCard credit card account. (Defs.' Stmt. of Mat. Facts ("DSMF") ¶ 5). After receiving the credit card and the account agreement, Dawson used the MasterCard for purchases. Id. at ¶¶ 11-13. According to the agreement, interest accrued on Dawson's Chase MasterCard at 22.99% per annum. Id. at ¶ 15; Pl.'s Resp. to DSMF & Additional Facts ("PAF")

¶¶ 15, 18. By the end of July 2002, Dawson had accrued almost $4000 in debt on his MasterCard account and had stopped making payments on the balance. DSMF at ¶¶ 16, 17; PAF ¶ 16.

Chase put Dawson's account into default, and on July 31, 2002, Defendant Bureaus Investment Group, LLC purchased the account for placement into Bureaus Investment Group Portfolio No. 1, LLC (collectively referred to herein as "Bureaus"). PAF ¶ 16; DSMF ¶ 19. Defendant The Bureaus, Inc. ("TBI"), acting on behalf of Bureaus, sent Dawson a letter in September seeking to collect the $3,969.46 reflected on Chase's final account statements prior to the assignment. DSMF ¶¶ 17, 27. No payment was forthcoming. In early November 2003, TBI sent Dawson a second letter, this time seeking to collect $4,896.05, which represented the balance due on the account plus interest. DSMF ¶ 28. Again, Dawson did not make any payments toward the amount due. Then, in late February 2004, TBI sent another letter, this time seeking $5,096.16. DSMF ¶ 29 Throughout the collection period, Bureaus charged Dawson approximately 19.7% interest. DSMF ¶¶ 28, 29.

In March 2004, Dawson filed suit. His complaint contends that the 19.7% interest rate is unlawful under the Illinois Interest Act ("IIA") and, consequently, that the Bureaus' attempts to collect any amount calculated using this rate violates both the Fair Debt Collection Practices Act ("FDCPA") and the Illinois Consumer Fraud Act

("ICFA"). Defendants now move for summary judgment pursuant to Fed. R. Civ. Proc. 56.

## LEGAL STANDARD

Summary judgment eliminates the need for a trial where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Proc. 56(c). To determine whether a grant of summary judgment is appropriate, the court must look beyond the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Id. The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This burden may be satisfied by presenting specific evidence on a particular issue or by indicating "an absence of evidence to support the non-moving party's case." Id. at 325. Once the movant has met this burden, the non-movant cannot simply rest on the bare allegations of the pleadings; rather, that party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e).

A genuine issue of material fact, in the context of a motion for summary judgment, is more than "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-

movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When the defendant moves for summary judgment, the court must view the record and make all reasonable inferences in a light most favorable to the plaintiff. Ameritech Benefit Plan Comm. v. Communication Workers of Am., 220 F.3d 814, 821 (7th Cir. 2000). However, the inferences construed in the plaintiff's favor must be drawn from specific facts identified in the record that support the plaintiff's position. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922-23 (7th Cir. 1994). Thus, a bare contention that an issue of fact exists is insufficient to create a factual dispute. Bellaver v. Quanex Corp., 200 F.3d 485, 492 (7th Cir. 2000). In deciding a motion for summary judgment, the court can only consider evidence that would be admissible at trial under the Federal Rules of Evidence. See Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). With these principles in mind, we turn to the present motion.

## DISCUSSION

Dawson's claims turn on the question of what effect the Illinois Interest Act ("IIA") has on the maximum interest rate Bureaus can lawfully charge. The specific provision on which Dawson relies specifies that "[n]o person or corporation shall directly or indirectly accept or receive . . . any greater sum or greater value for the loan . . . than is expressly authorized by this Act or other laws of this State." See 815 ILCS 205/5. According to Dawson, this provision operates to prevent any party other than

-4-

regulated banks or entities licensed under the Sales Finance Agency Act, 205 ILCS 660/1 et seq., from exacting interest from Illinois residents in excess of 9% per annum referenced in 815 ILCS 205/4(1). Because Defendants do not fall into either of these categories and because there is no written agreement between Defendants and Dawson, Dawson argues that the IIA limits them to collecting the balance upon assignment plus 5% interest from that time forward. 815 ILCS 205/2. If Dawson's construction is correct, it would follow that the letters that TBI sent employing the 19.7% rate constituted false, deceptive, or misleading representations as to the amount of Dawson's debt in contravention of 15 U.S.C. § 1692e. In addition, 15 U.S.C. § 1692f would prohibit Defendants' attempts to collect a debt including interest in that amount. The ICFA would apply in a similar manner. See 815 ILCS 505/2.

It is significant to note at this point what Dawson does not contend: he does not allege that the original 22.99% interest rate exacted by Chase was improper or illegal. In fact, he admits that his Chase account provided for that rate of interest. Nor does he claim that Bureaus ever charged him more than 22.99% interest.

For their part, Defendants first contend that Dawson's claim does not present an issue for trial because the IIA is preempted by federal law for purposes of this case, preventing it from operating as a basis for a violation of either the FDCPA or the ICFA. Second, Defendants assert that, because Bureaus was an assignee of Chase, it should

be afforded the same treatment under the IIA that Chase would receive, including exemption from the interest rates enumerated within the statute. Third, Defendants contend that even if the IIA applies, Dawson cannot apply the FDCPA to Bureaus because it did not act as a debt collector with respect to him.

To properly assess any of the arguments Defendants advance, we must first determine the impact of Bureaus' status as assignee of the Chase debt. When state law supplies the rule of decision, in the absence of a clear mandate from a state supreme court, a federal court applying the state law must "predict how the state's highest court would decide the case, and decide it the same way." Mindgames, Inc. v. Western Publishing Co., Inc., 218 F.3d 652, 655–56 (7th Cir. 2000). In making this prediction, we may consider the decisions of lower state courts as well as courts in other jurisdictions, giving each authority weight commensurate with its place within the appropriate hierarchy and with the force of its persuasive value, as none of the decisions will be directly binding. See Stephan v. Rocky Mountain Chocolate Factory, Inc., 129 F.3d 414, 417 (7th Cir. 1997). The parties have not brought to our attention any decision of the Illinois Supreme Court or any Illinois appellate court squarely addressing this issue, nor has our research revealed any. One Illinois trial court and two courts within the Northern District of Illinois have addressed the issue, and we are convinced that the Illinois Supreme Court, if presented with the question under

consideration, would have an outcome like these cases. PRA III LLC v. Hund, No. 03 LM 289 (Cir. Ct. 9th Jud. Cir. Knox Cty. Nov. 8, 2004); Vickey v. Asset Acceptance, LLC, 2004 WL 1510026 (N.D. Ill. Jul. 2, 2004); Olvera v. Blitt & Baines, P.C., 2004 WL 887372 (N.D. Ill. Apr. 26, 2004).[1] However, we reach that conclusion under a rationale slightly different from that advanced in PRA, Vickey, and Olvera.

The lynchpin of Dawson's claims is the IIA and its application to Defendants. Dawson argues that the IIA permits only three scenarios with respect to allowable rates of interest: unlimited, 9%, or 5%. According to him, only specifically enumerated entities can charge interest in excess of 9%, and because Defendants are not any of those entities, they must content themselves with the lower rates or face liability under the FDCPA and ICFA.

Dawson's position stems principally from 815 ILCS 205/5, which we quoted above. His construction of this statutory provision focuses on the phrases "[n]o person or corporation" and "authorized by this Act." It primarily ignores the concluding phrase, which allows a party to charge sums or values that are authorized by "other

---

[1] The issue presented in today's motion also arose in Shanahan v. Porick. 2004 WL 406768 (N.D. Ill. Feb. 27, 2004). That decision, in the context of a motion to dismiss, concluded that the plaintiff had stated a cognizable claim. This outcome is not in conflict with our decision today. In any event, the differing procedural posture makes the case inapposite.

laws of this State"; Dawson acknowledges only the Sales Finance Agency Act as a law that could confer the required authority.

We disagree with Dawson's restrictive reading of this paragraph. In construing a statute, we must always strive to ascertain and give effect to the legislature's intent. Hawes v. Luhr Bros., Inc., 816 N.E.2d 345, 352 (Ill. 2004). The plain language of the statute gives the most reliable indications of intent. Id. In addition, we must look at all of the language used within the statute and give reasonable meaning to the same so that no word, clause, or sentence is rendered superfluous. People v. Botruff, 817 N.E.2d 463, 468 (Ill. 2004). If the Illinois General Assembly had meant to limit the last phrase of 815 ILCS 205/5 in the manner that Dawson advocates, it would have done so. Moreover, the use of the plural "laws" contradicts the notion that only a single statute falls within the scope of that phrase. The natural reading of the language quoted above necessitates that we look to all the laws of Illinois to determine whether Defendants' conduct was authorized. Otherwise, the last phrase becomes largely meaningless.

As Defendants and three of the four cases that have examined scenarios similar to this one have noted, the laws of the state of Illinois address the question of what rights Defendants had, including what rate of interest they could impose on Dawson's debt. In Illinois, when an assignor manifests an intention to assign a contractual right,

the assignor passes the right to demand performance on that right by the obligor to the assignee. Strosberg v. Brauvin Realty Services, Inc., 691 N.E.2d 834, 843 (Ill. App. Ct. 1998). The assignee thus "stands in the shoes" of the assignor with respect to the assigned rights. John O. Schofield, Inc. v. Nikkel, 731 N.E.2d 915, 925 (Ill. App. Ct. 2000). The assignee cannot acquire greater rights than the assignor enjoyed, but the assignment allows the assignee the full range of rights transferred. Owens v. McDermott, Will and Emery, 736 N.E.2d 145, 155 (Ill. App. Ct. 2000).

Here, the parties agree that Chase was entitled to exact 22.99% interest on Dawson's credit card balance.[2] At the time the debt was assigned, then, the laws of the state of Illinois authorized Defendants to charge interest up to and including the 22.99% rate. Because Defendants did not exceed this amount, i.e., attempt to exercise rights beyond those enjoyed by the assignor, their activities were lawful under the IIA and consequently did not violate the FDCPA or the ICFA.

In light of the above, we need not reach Defendants' alternative arguments regarding federal preemption of the IIA or whether Bureaus was a debt collector under the FDCPA.

---

[2] This agreement guts any viability of Dawson's claim under 15 U.S.C. § 1692f, as it constitutes an admission that the original agreement between the parties allowed interest up to 22.99%. As a result, that amount of interest was authorized by the agreement creating the debt, and Bureaus was not prohibited by 15 U.S.C. § 1692f(1) from attempting to collect the calculated amounts.

## CONCLUSION

Based on the foregoing analysis, Defendants' motion for summary judgment is granted.

*Charles P. Kocoras*
Charles P. Kocoras
Chief Judge
United States District Court

Dated: DEC 13 2004